

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00332-CV

**IN THE INTEREST OF A.Y.G.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00604
Honorable Linda A. Rodriguez, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: October 30, 2024

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her child, A.Y.G. (born 2021).[1] In four appellate issues that we construe as three, Mother argues: (1) the evidence is legally and factually insufficient to support the trial court's termination findings under Texas Family Code section 161.001(b)(1)(D), (E), and (O); (2) the evidence is legally and factually insufficient to support the trial court's finding that termination is in A.Y.G.'s best interest; and (3) the trial court's conservatorship finding amounts to an abuse of discretion. We affirm.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child; we refer to the child's biological Mother as Mother. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

In November 2022, the Texas Department of Family and Protective Services (the "Department") received a referral for removal of A.Y.G. due to negligent supervision, lack of stable housing, and substance use. Six months later, on April 25, 2023, the Department filed its original petition to terminate Mother's parental rights. Subsequently, the Department created a service plan for Mother that required her to, among other things: participate in individual counseling, parenting classes, drug testing, and drug counseling; complete a psychological evaluation; provide proof of employment; and provide proof of stable and appropriate housing. The Department ultimately pursued termination of Mother's parental rights.

A bench trial was held on April 22, 2024. The trial court heard testimony from three witnesses: Department investigator, Beverly Preciado; Department caseworker, Kisha Mitchell-Dinkins; and Mother. At the conclusion of the trial, the trial court signed an order terminating Mother's parental rights pursuant to Texas Family Code section 161.001(b)(1)(D), (E), and (O) and made findings that termination of Mother's parental rights was in A.Y.G.'s best interest.[2] Mother appeals.

## ANALYSIS

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination

---

[2] The trial court also terminated the parental rights of A.Y.G.'s unknown father, who is not a party to this appeal.

proceedings in favor of the parent." *Id.* The Department has the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and that termination was in the best interest of A.Y.G. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283

S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Statutory Termination Grounds*

#### *Applicable Law*

In Mother's first issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under subsections (D), (E), and (O). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O). In general, assuming a best interest finding, establishing only one predicate ground under section 161.001(b)(1) is necessary to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.). However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are instructed to

address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236-37 (Tex.2019). Because we find there is sufficient evidence supporting the trial court's predicate grounds under subsections (D) and (E), it is unnecessary for us to address the trial court's finding under subsection (O). *See id.*

Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. A parent does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of the potential for danger is sufficient. *Id.* The relevant period for review of the environment supporting termination under subsection (D) is before the Department removes the child. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court determines

whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. Courts may consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.); *see also In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) ("While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial risk of harm."). We consolidate our application as to both subsections (D) and (E) because the evidence concerning those two grounds is interrelated. *See In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.).

*Application*

Turning to Mother's specific arguments, she contends the evidence presented at trial is legally and factually insufficient to establish that she knowingly endangered A.Y.G. or that she knew or had any reason to know A.Y.G. may be in danger. Mother argues the evidence was insufficient to carry the Department's burden; thus, the termination of her parental rights under subsections (D) and (E) is not supported by clear and convincing evidence. We disagree.

The trial court heard the following evidence relevant to its determinations under subsections (D) and (E): Mother admitted to using drugs during the Department's investigation and the pendency of this case, was administratively discharged from an inpatient substance abuse facility, and failed to take actions to address her sobriety; A.Y.G. was "born with syphilis, that contributed to developmental delays"; Mother testified that she had previously been to prison and was incarcerated during the pendency of the proceeding for a felon in possession of a firearm

charge; and Mother failed to provide proof that she had obtained stable housing and employment as required by her service plan.[3]

An unresolved history of drug abuse exposes A.Y.G. to danger, potentially destabilizes the home, and exposes A.Y.G. to physical and emotional harm. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8. Moreover, Mother failed to attend months of scheduled drug testing required by the Department. The trial court could have inferred from Mother's failures to submit to court-ordered drug testing that she continued to use drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). In addition to continued illegal drug use, Mother failed to complete inpatient and outpatient treatment and refused alternative treatment options; failed to substantially complete many of her substance-related services; and was incarcerated in connection with her felony conviction. *See In re A.L.S.*, 660 S.W.3d 257, 273 (Tex. App.—San Antonio 2022, pet. denied) (finding endangerment, in part, because appellant did not finish the service-plan mandated counseling and continued to use drugs in violation of the service plan); *In re A.J.R.*, No. 14-18-00951-CV, 2019 WL 1523586, at *5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2019, pet. denied) (mem. op.) ("A parent's criminal conduct and imprisonment are relevant to the question of whether the parent engaged in a course of conduct that endangered the well-being of the child. Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue."). Although Mother asserted that she participated in drug testing in connection with her felony probation for her felon in possession of a firearm case, the record does not show that Mother provided the test results, if any, to the Department.

---

[3] Eight exhibits were admitted during trial, including, Mother's court-ordered service plan, a capias for Mother due to her violating the conditions of her community supervision, an order unsatisfactorily discharging Mother from community supervision, and an order amending Mother's conditions of community supervision requiring Mother to be incarcerated for ninety days, noting that period of incarceration was a "JSAT" (judgment satisfied).

Another consideration for the trial court was that Mother failed to obtain stable housing or show proof of employment. At the beginning of the case, Mother was going back and forth between a relative's home, "the person that she named as the father for [A.Y.G.]," and Mother's "adult daughter's home." Mother then moved to Haven for Hope. However, at the time of trial, Mitchell-Dinkins was uncertain of Mother's living situation. Mother testified that she was currently living with her son and daughter but recently obtained an RV and intended to live in it. Mother further testified that she has income from her husband and ex-boyfriend, but she did not provide documentary proof of these sources of income, nor did she provide proof of stable employment.

After reviewing the competent evidence under the appropriate standards of review, we conclude that a factfinder could have reasonably formed a firm belief or conviction that Mother knowingly allowed A.Y.G. to remain in conditions or surroundings and engaged in conduct (e.g., prolonged illegal drug use, failure to provide proof of stable housing and employment, and a period of recent incarceration) which endangers the physical or emotional well-being of A.Y.G. Accordingly, we overrule Mother's first issue.

### Best Interest

#### Applicable Law

In Mother's second issue, she challenges the legal and factual sufficiency of the trial court's order that termination of her parental rights is in A.Y.G.'s best interest. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the

Department satisfied this burden, the Texas Legislature has provided several factors[4] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[5] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose a child to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*,

---

[4] These factors include, *inter alia*: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[5] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

2019 WL 3937278, at *8. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Prot. & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

*Application*

At the time of trial, A.Y.G., two years old, was too young to express her desires. Although Mitchell-Dinkins testified that Mother and A.Y.G. had a strong bond, the trial court could have also considered that A.Y.G. had bonded with her current placement—maternal aunt and uncle— who intend to be A.Y.G.'s permanent placement. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied); *In re A.M.M.,* No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) ("That A.M.M. is thriving in the current placement with her maternal aunt and uncle in a stable and nurturing environment with a planned adoption further supports the trial court's finding that termination is in A.M.M.'s best interest."); *E.F. v. Tex. Dep't of Family & Prot. Servs.*, No. 03-11-00325-CV, 2011 WL 6938496, at *3 (Tex. App.—Austin Dec. 30, 2011, no pet.) (mem. op.) ("When assessing the desires of children too young to testify articulately, courts can consider their bond with their parents and prospective adoptive parents.").

Additionally, the trial court could have concluded termination was in A.Y.G.'s best interest based in part on Mitchell-Dinkins's testimony that Mother did not meaningfully engage in services and did not provide proof of stable income or housing for A.Y.G., and that adoption by maternal aunt and uncle was in A.Y.G.'s best interest. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.— Houston [14th Dist.] 2016, pet. denied) ("A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-

interest determination."); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10)–(12). As detailed above, from the onset of the case to its conclusion, Mother failed to show proof of stable housing. For these reasons, the trial court could have believed Mother could not provide a safe and stable home for A.Y.G. In contrast, the trial court could have believed that maternal aunt and uncle provided a safe and stable home that had allowed A.Y.G. to thrive, notwithstanding her developmental delays.

Moreover, Mother's extensive unresolved history of drug use, also detailed above, exposes A.Y.G. to danger, potentially destabilizes the home, and exposes A.Y.G. to physical and emotional harm. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8. The trial court could have believed that Mother was continuing to use drugs and was unwilling or unable to successfully complete the programs available to her. *In re J.M.T.*, 519 S.W.3d at 270.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of A.Y.G. *In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371–72; TEX. FAM. CODE § 263.307(b). We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's second issue.

### Conservatorship

In Mother's third and final issue, Mother challenges the trial court's conservatorship determination on the basis that conservatorship should be reconsidered where a trial court's

termination order is reversed on appeal. But because this argument requires Mother to prevail on one of her other two issues, and because we have overruled those issues, we necessarily overrule her final issue.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice